UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

No. 09-CV-2897 (JFB) (ARL)
_____

LINDA HARLEY,

Plaintiff,

VERSUS

SUFFOLK COUNTY POLICE DEPARTMENT, ET AL.,

Defendants.

_____

MEMORANDUM AND ORDER
February 28, 2012
_____

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Linda Harley (hereinafter, "Harley" or "plaintiff") brings this action alleging violations of her civil rights under 42 U.S.C. § 1983. Plaintiff alleges that defendants violated her constitutional rights by falsely arresting and maliciously prosecuting her, and by using excessive force against her following a high-speed chase on June 27, 2006 on the Long Island Expressway.

Defendants Suffolk County Police Department, Matthew Decoteau ("Decoteau"), Richard Pfeiffer ("Pfeiffer"), Bruce Blanco ("Blanco"), Rockford (Rochford), Capriola, Tramantana, Jeffrey Klug, Perigout, Jane Doe, John Doe #1, John Doe #2, Detective Earl Strom, the Suffolk County Correction Department, and Sergeant Bouse ("Bouse") (collectively, "Suffolk County defendants") and the Nassau County Police Department and James McMullen ("McMullen") (together, "Nassau County defendants") (collectively, "defendants") now move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. As set forth below, the motion for summary judgment is granted as to the Nassau County defendants. As to the Suffolk County defendants, the motion for summary judgment is denied with respect to plaintiff's claim of excessive force and granted with respect to all other claims.

I. BACKGROUND

A. Facts

The Court has taken the facts set forth below from the parties' depositions, affidavits,

and exhibits, and from the parties' respective Rule 56.1 Statements of Facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005). Because the Court construes the facts in the light most favorable to the non-moving party, the following recitation describes the plaintiff's version of events based upon her sworn testimony. Thus, these are not findings of fact by the Court. The Court notes that the defendants dispute the accuracy of plaintiff's allegations.

At approximately 11:30 a.m., on June 27, 2006, plaintiff left Queens and began driving east on the Long Island Expressway ("L.I.E."). (Pl.'s 56.1 ¶ 1, SC[1] Defs.' 56.1 ¶ 1, NC[2] Defs.' 56.1 ¶ 8.) The plaintiff was traveling in the left lane between exits 31 and 32, in Nassau County, when "two box cars" prevented her from seeing the expressway up ahead, and prevented her from going around them. (Pl.'s 56.1 ¶ 2.) Between exits 32 and 33, Nassau County Police officer James McMullen "cut diagonally" from the far right-hand lane, in front of a tractor trailer, "with his strobe light flashing." (*Id.* ¶¶ 3-4.) Plaintiff believed he was going to aid and assist her because he witnessed the incident involving the box cars. (*Id.* ¶ 3.) Instead, McMullen "positioned his r.m.p. vehicle directly behind the plaintiff['s] Toyota RAV 4 SUV practically on the bumper intimidating and harassing her." (*Id.* ¶ 5.) He did not use his loud speaker or siren to indicate that plaintiff should pull over. (*Id.*) Because "plaintiff wasn't doing anything wrong and also because of the prior incident," plaintiff believed that her life was in imminent danger, so she "took off speeding." (*Id.* ¶ 6.) At her deposition, plaintiff stated that she accelerated to "100, over that, over 100" after McMullen began to chase her, eventually reaching 110 m.p.h. (NC Defs.' Decl. In Support of Motion for Summary Judgment ("Petillo Decl."), Ex. I at 156; *see* NC Defs.' 56.1 ¶ 17.) Plaintiff encountered traffic starting around exit 49, and "was changing lanes." (Petillo Decl., Ex. I at 159.)

McMullen then transmitted "bogus information" to the Nassau dispatcher, informing them that plaintiff was driving with a suspended license, a possible DWI, DUI, was a robbery suspect, and was driving a stolen vehicle with no registration. (Pl.'s 56.1 ¶ 7.) Another transmission mentioned that plaintiff had thrown a gun out of the window of the SUV. (*Id.*) McMullen pursued the plaintiff into Suffolk County. (*Id.* ¶ 8, NC Defs.' 56.1 ¶ 21.)

Sergeant Capriola of the Suffolk County Highway Patrol received a radio call of a "pursuit in progress" coming from Nassau County on the L.I.E. (Pl.'s 56.1 ¶ 9.) Capriola and Blanco drove to the L.I.E., then "gave chase" when they saw the SUV pass at 110 m.p.h. (*Id.*) Shortly after entering Suffolk County, plaintiff noticed that the speedometer was "going backward," and that there was no pressure under the gas pedal when she tapped it lightly. (*Id.* ¶ 12.)

Plaintiff first encountered "stop strips" at exit 55, when someone came from the far left side of the L.I.E., stepped into the left lane, then dove to the right side of the expressway to the next lane. (*Id.* ¶ 14.) The SUV was still

---

[1] The Court refers to the Suffolk County defendants' 56.1 statement as "SC Defs.' 56.1."

[2] The Court refers to the Nassau County defendants' 56.1 statement as "NC Defs.' 56.1."

2

malfunctioning, with the speedometer going "backward" and "declining." (*Id.* ¶ 15.) Between exits 63 and 64, plaintiff encountered a second set of "stop strips," which blew out one of her front tires. (*Id.* ¶ 16.) Plaintiff had difficulty controlling the vehicle and hit a divider, causing damage to the front passenger side light. (*Id.* ¶ 16; SC Defs.' 56.1 ¶ 10.) The vehicle slowed to 40-50 m.p.h., then to 15 m.p.h. (Pl.'s 56.1 ¶¶ 17-18.) Plaintiff pulled onto a grass median strip at 5 m.p.h., then stopped. (*Id.* ¶ 19-20.)

As six Suffolk County Highway Patrol officers surrounded plaintiff with guns drawn, plaintiff placed her hands in the air above her head. (*Id.* ¶ 21.) Plaintiff attempted to open the driver's side door and window, but both were locked, and the keys were stuck in the ignition. (*Id.* ¶ 22.) At this point, the officers holstered their guns and pulled out their nightsticks. (*Id.* ¶ 24.) Decoteau struck the windshield, cracking it, then struck the passenger's front side window until it shattered, spraying shards of glass into the plaintiff's face and right eye. (*Id.* ¶ 25.) Decoteau and Blanco or Pfeiffer pulled plaintiff through the broken window. (*Id.* ¶ 26.) The six officers formed a semi-circle around the plaintiff with one set of officers in front of a second set of officers. (*Id.* ¶ 27.) The first set beat the plaintiff with their nightsticks on her shoulders, arms, hands, and legs, and the second set then stepped forward to beat plaintiff on her shoulders, arms, and hands. (*Id.* ¶ 28.) The two sets of officers alternated beating her. (*Id.*) Decoteau pulled plaintiff by the arm behind the SUV, placed her arms behind her back, and handcuffed her. (*Id.* ¶ 29.) He placed plaintiff "spread eagle on the ground, splayed his hand on the back of her head, and banged her head on the asphalt, hard, three or four times." (*Id.* ¶ 30.) He rubbed the skin from her forehead, eyebrows, nose, lips, and the right side of her face. (*Id.*) He then picked the plaintiff up off the ground with one hand on her handcuffs and the other on plaintiff's hair. (*Id.* ¶ 31.)

At this point, Tramantana, an officer in the K-9 unit, was holding his dog tightly on a leash. (*Id.* ¶ 32.) The dog was barking, and someone shouted "stand down" repeatedly. (*Id.*) An officer brought Decoteau plaintiff's driver's license from the car. (*Id.* ¶ 33.) Decoteau asked plaintiff where her license was, and she responded that it was in his hands. (*Id.*) Bouse told Decoteau to stand the plaintiff up, and she replied that her leg was broken. The bone was jutting out of the lower part of her right leg and blood was on her pants. (*Id.* ¶ 34.) Decoteau placed her back down on the ground, bent plaintiff forward toward him, removed the handcuffs, and walked away. (*Id.* ¶ 35.) Tramantana, the barking dog, and other officers were still present when emergency medical personnel ("EMS") arrived. (*Id.*)

EMS asked plaintiff what happened, placed her in a vehicle and gave her oxygen, then transported her to Brookhaven Memorial Hospital Medical Center. (*Id.* ¶ 36.) At the hospital, plaintiff told doctors and nurses that she had been beaten up by Suffolk County police officers. (*Id.* ¶ 37.) As the plaintiff was wheeled inside the ER, a police officer sitting nearby asked why she did not stop. Plaintiff did not answer. (*Id.* ¶ 38.) Detective Stroman arrived and "tried to prevent the nurse from asking the plaintiff what had happened to her, and to further check the plaintiff's injuries." (*Id.* ¶ 39.) A doctor told plaintiff she had shards of glass embedded in the skin over her right eye, which he removed and sutured. (*Id.* ¶ 41.)

On June 30, 2006, plaintiff was arrested in her hospital room by a plainclothes detective who read her *Miranda* rights, fingerprinted her, and took mugshots. (*Id.* ¶ 43.) Later that day, two corrections officers arrived and removed plaintiff from Brookhaven Hospital. (*Id.* ¶ 44.) Plaintiff was taken to the Suffolk County Jail in Riverhead, but she allegedly was not permitted to stay at the jail because of her injuries. (*Id.* ¶ 48.) Instead, plaintiff was transferred to Peconic Bay Medical Center in Riverhead, New York. (*Id.*)

Defendants dispute plaintiff's allegations that they used excessive and gratuitous force during the arrest. In particular, according to the defendants, Harley attempted to strike police officer Decoteau with her vehicle causing him to jump out of the way. (SC Defs.' 56.1 ¶ 15.) Moreover, defendants assert that, after Harley came to a stop, plaintiff hit and injured police officers Blanco, Pfeiffer, and Decoteau with a vehicle antitheft device known as "the Club," and they were eventually able to overcome Harley's violent resistance and take her into custody. (*Id.* ¶¶ 14-15.)

Harley was indicted and charged with seventeen counts, including assault in the second degree upon police officers Blanco, Decoteau, and Pfeiffer, N.Y. Penal Law § 120.05(3) (Counts 1, 2, and 3); reckless endangerment in the first degree, N.Y. Penal Law § 120.25 (Count 4); resisting arrest, N.Y. Penal Law § 205.30 (Count 5); aggravated unlicensed operation of a motor vehicle in the second degree, N.Y. Vehicle and Traffic Law §1212 (Count 6); reckless driving, N.Y. Vehicle and Traffic Law § 1212 (Count 7); operating a motor vehicle without financial security, N.Y. Vehicle and Traffic Law § 319(11) (Count 8); exceeding fifty five miles per hour speed limit, N.Y. Vehicle and Traffic Law § 1180(b) (Count 9); failure to obey a police officer, N.Y. Vehicle and Traffic Law § 1102 (Count 10); overtaking on the left, N.Y. Vehicle and Traffic Law § 1122 (Count 11); operating a motor vehicle without a seat belt, N.Y. Vehicle and Traffic Law § 1229 (Count 12); crossing over official markings, N.Y. Vehicle and Traffic Law § 1128(d) (Count 13); failing to stay in a designated lane, N.Y. Vehicle and Traffic Law § 1128(d) (Count 14); driving on the shoulder or slope of the roadway, N.Y. Vehicle and Traffic Law § 1131 (Count 15); obstructing governmental administration in the second degree, N.Y. Penal Law § 195.95 (Count 16); and attempted aggravated assault upon a police officer against Decoteau (Count 17). (NC Defs.' 56.1 ¶ 23, SC Defs.' 56.1 ¶ 18.)

The three counts of assault in the second degree were premised upon her having hit and injured the police officers with the Club. The count of reckless endangerment in the first degree was premised on her having driven her vehicle recklessly in an attempt to strike officer Decoteau, causing him to jump out of the way. (SC Defs.' 56.1 ¶ 15.)

The jury convicted Harley of all counts except Count 12, operating a motor vehicle without a seat belt. (*Id.* ¶ 20.) She was sentenced to ten years' imprisonment plus five years' post-release probation. (NC Defs.' 56.1 ¶ 27.)

B. Procedural History

On June 25, 2009, this case was transferred to this District from the United States District Court for the Southern District of New York. Plaintiff served a Complaint on defendants on or about November 2, 2009. On December 9, 2009, a pre-motion conference was held and

4

plaintiff stated that she wished to file an amended complaint before any motions to dismiss were filed. The Court directed that plaintiff file an amended complaint by December 31, 2009, and defendants were to notify the Court by January 15, 2010 whether they intended to bring a motion to dismiss. Plaintiff failed to file an amended complaint by December 31, 2009. On January 15, 2010, the Nassau County defendants renewed their request to bring a motion to dismiss. On January 21, 2010, plaintiff filed her First Amended Complaint ("First Am. Compl."), which the Court accepted.[3]

On March 10, 2010, the Nassau County defendants filed a motion to dismiss. On May 18, 2010, plaintiff filed her opposition. On May 26, 2010, the Nassau County defendants filed their reply. On December 30, 2010, this Court dismissed the claims against the Nassau County Police Department, but deemed that those claims were asserted against the County of Nassau. This Court dismissed the claims against the County of Nassau, but granted plaintiff leave to amend her pleadings to reassert a claim against the County of Nassau pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690-91 (1978). This Court dismissed any claims pursuant to 42 U.S.C. § 1985 against the Nassau County defendants, but granted plaintiff leave to amend her pleadings to assert a Section 1985 claim. Finally, this Court denied the motion to dismiss the other claims against defendant McMullen.

On March 14, 2011, plaintiff filed a Second Amended Complaint ("Second Am. Compl.").[4] Nassau County defendants filed a motion for summary judgment on August 8, 2011. Suffolk County defendants filed a motion for summary judgment on August 11, 2011. Plaintiff filed an Opposition on October 31, 2011. Nassau County defendants filed a reply on November 14, 2011. On January 9, 2012, the Court docketed additional exhibits submitted by plaintiff accompanying her Opposition, and provided defendants with a further opportunity to reply. The Suffolk County defendants submitted a letter on January 24, 2012, indicating that they did not wish to file a supplemental reply.

The Court has fully considered the parties' submissions and arguments.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

---

[3] Plaintiff does not label the complaint "First Amended Complaint," but the Court identifies it as such. First Am. Compl., Jan. 21, 2010, ECF No. 27.

[4] Plaintiff does not label the complaint "Second Amended Complaint," but the Court identifies it as such. Second Am. Compl., Mar. 14, 2011, ECF No. 83.

5

admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48, 106 S. Ct. 2505 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III. DISCUSSION

#### A. Section 1983 Claims

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985)).

#### B. Suffolk County Defendants

Harley seeks recovery against the Suffolk County defendants pursuant to 42 U.S.C. § 1983 for false arrest, malicious prosecution, and excessive force. The Suffolk County defendants argue, based upon the rule articulated by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), that plaintiff's criminal convictions, arising from the events of June 27, 2006, preclude plaintiff from pursuing these Section 1983 claims.

6

As set forth below, given her criminal convictions, plaintiff's false arrest and malicious prosecution claims cannot survive summary judgment. However, the excessive force claim – which includes sworn testimony by plaintiff of excessive force after she was subdued and handcuffed – is not precluded by her conviction for assaulting the police officers. Thus, the excessive force claim survives summary judgment.

1. False Arrest and Malicious Prosecution

"Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (false arrest) and *Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984) (malicious prosecution)).

To succeed on a malicious prosecution claim under § 1983, a plaintiff must show (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice. *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009); *Drummond v. Castro*, 522 F. Supp. 2d 667, 677-78 (S.D.N.Y. 2007). Malicious prosecution claims under § 1983 also require that there "'be a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment.'" *Conte v. County of Nassau*, 06-CV-4746 (JFB)(ETB), 2008 U.S. Dist. LEXIS 25694, 2008 WL 905879, at *11 (E.D.N.Y. Mar. 31, 2008) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)).

In *Heck v. Humphrey*, the Supreme Court "confronted the question of whether, given the overlap between § 1983 and the federal habeas corpus statute, a prisoner seeking civil damages may proceed with a § 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or sentence." *Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999) (citing *Heck*, 512 U.S. at 480-90). The Supreme Court in that case explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

7

512 U.S. at 486-87 (footnote omitted) (emphasis in original); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005) ("*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would* necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." (emphasis in original)). Thus, pursuant to *Heck*, courts routinely dismiss claims brought under Section 1983 when such claims bear on the validity of an underlying conviction or sentence. *See, e.g.*, *Guerrero v. Gates*, 442 F.3d 697, 703-04 (9th Cir. 2006) (holding that *Heck* bars plaintiff's § 1983 claims of wrongful arrest, malicious prosecution, and conspiracy); *Amaker*, 179 F.3d at 51-52 (holding that *Heck* applies to Section 1983 conspiracy); *Perez v. Cuomo*, No. 09 Civ. 1109 (SLT), 2009 U.S. Dist. LEXIS 33290, 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 20, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction . . . . Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]") (internal quotation marks and citations omitted); *Younger v. City of N.Y.*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (holding that plaintiff's claims for false arrest/imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck*); *cf. Jovanovic v. City of N.Y.*, No. 04 Civ. 8437 (PAC), 2006 U.S. Dist. LEXIS 59165, 2006 WL 2411541, at *12 (S.D.N.Y. Aug. 17, 2006) (applying *Heck* to a Section 1983 claim for denial of the right to a fair trial in the context of a statute of limitations issue).

In the instant case, plaintiff claims that she was falsely arrested by the Suffolk County Police Department on June 27, 2006 following the high-speed chase on the L.I.E. Subsequent to her arrest, Harley was indicted and charged with seventeen counts, detailed *supra*, stemming from the events of June 27, 2006. On September 18, 2008, following a trial, a jury convicted Harley on sixteen of the seventeen counts, including three counts of assault in the second degree upon police officers, reckless endangerment in the first degree, resisting arrest, obstructing governmental administration in the second degree, attempted aggravated assault upon a police officer, and a series of traffic violations. The only count on which Harley was acquitted was operating a motor vehicle without a seat belt. (SC Defs.' 56.1 ¶ 20; SC Defs.' Motion for Summary Judgment, Ex. D.) Under the doctrine of *Heck*, Harley's criminal convictions – which included convictions for her criminal conduct prior to the arrest (including a series of traffic violations) – bar any claim of false arrest.

Similarly, Harley claims that she was maliciously prosecuted by defendants for the incidents occurring on June 27, 2006. As discussed above, under the doctrine of *Heck*, plaintiff's criminal convictions bar any claim for malicious prosecution for those charges. In particular, to establish a claim for malicious prosecution, the plaintiff must demonstrate that the subject proceeding was terminated in the plaintiff's favor. Since plaintiff was convicted of all counts (with the exception of Count Twelve), she cannot demonstrate the requisite favorable termination.[5] Thus, as a matter of

---

[5] The Court has, as required by the Second Circuit, considered whether plaintiff should be able to proceed on a malicious prosecution claim for the one count for which she was acquitted – namely, Count Twelve (Operating a Motor Vehicle Without

8

a Safety Belt). The Court, however, concludes that she cannot because the acquitted count is closely intertwined with her counts of conviction and, in any event, is only a traffic infraction, while she was convicted of multiple felonies. The Court recognizes that, in contrast to false arrest claims, the Second Circuit has noted that a conviction on one claim does not necessarily absolve liability under § 1983 for malicious prosecution as to other criminal charges which were resolved favorably to plaintiff. *See Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989) (claim of malicious prosecution on charge of resisting arrest, of which plaintiff was acquitted, was not barred by his conviction for disorderly conduct); *see also Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) (highlighting "the need to separately analyze the charges claimed to have been maliciously prosecuted"). Thus, for the same reasons in this case, a conviction on some charges does not necessarily bar a malicious prosecution claim on an acquitted count; rather, the Court should analyze a number of factors, including the relative seriousness of the two offenses "whether the elements of each charge are different, whether one charge is a lesser included offense of the other, and whether the alleged actions were directed at different people." *Pichardo v. N.Y. Police Dep't*, No. 98-CV-429 (DLC), 1998 U.S. Dist. LEXIS 18025, 1998 WL 812049, at *3 (S.D.N.Y. Nov. 18, 1998) (citing *Janetka*, 892 F.2d at 190); *see also Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 335-40 (E.D.N.Y. 2006) (discussing factors). Analyzing the various factors in the instant case – including that the crimes of conviction (some of which are felonies) are substantially more serious than the acquittal on the traffic infraction, and arose out of the same incident – the Court concludes that the existence of probable cause as to the counts of conviction precludes a malicious prosecution claim on the acquitted counts. Thus, the acquitted charges are "so closely intertwined with the offense of conviction that there is no reasonable basis to conclude that the [dismissal of] these charges is sufficiently distinct to support a claim of malicious prosecution." *Pichardo*, 1998 WL 812049, at *4 (finding conviction on misdemeanor assault precluded malicious prosecution on felony assault count on same incident). In fact, if the only offense were an alleged seat belt violation, courts have held a malicious prosecution claim for such a traffic infraction, by itself, could not be brought as a matter of law because it is not a criminal offense. *See, e.g.*, *Standt v. City of New York*, 153 F. Supp. 2d 417, 434 (S.D.N.Y. 2001) ("As violation of §509 is not a criminal offense, the traffic court proceeding is civil in nature, a regulatory rather than a 'criminal proceeding.' Therefore, the first element of the malicious prosecution claim cannot be met, and summary judgment is granted on that claim."); *see also Holmes v. McGuigan*, 184 Fed. App'x 149, 151-52 (3d Cir. 2006) ("[h]aving to defend oneself against a speeding ticket is not a seizure"). In sum, Count Twelve cannot be the basis for a malicious prosecution claim in this case. law, plaintiff's malicious prosecution claim cannot survive summary judgment.

In sum, even accepting plaintiff's allegations as true and drawing all reasonable inferences in plaintiff's favor, the Court finds that plaintiff cannot successfully bring a false arrest or malicious prosecution claim because her convictions in connection with the alleged incident, as a matter of law, prevent plaintiff from pursuing any false arrest or malicious prosecution claim, pursuant to Section 1983, arising from the incident.

### 2. Excessive Force

A police officer's use of force is excessive in violation of the Fourth Amendment "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). More specifically,

"[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citations and internal quotations omitted).

The Suffolk County defendants contend that the doctrine of *Heck* also precludes plaintiff's claim of excessive force. They argue that, in convicting Harley of three counts of assault in the second degree in violation of N.Y. Penal Law 120.05(3), the jury necessarily found that officers Decoteau, Blanco, and Pfeiffer used force only within the bounds of lawful duty when they placed plaintiff under arrest. Specifically, N.Y. Penal Law 120.05(3) reads, in relevant part:

> A person is guilty of assault in the second degree when . . . with intent to prevent a peace officer [or] a police officer . . . from performing a lawful duty, . . . he or she causes physical injury to such peace officer [or] police officer.

N.Y. Penal Law 120.05(3).

Because one of the elements of the crime is that the police officer was engaged in his lawful duty at the time of the assault, Suffolk County defendants contend that the jury necessarily found that the use of force by the officers to place plaintiff under arrest was in the lawful performance of the officers' duty.

The Court disagrees. Plaintiff's conviction does not preclude her ability to show that even if she assaulted officers at some point during the arrest, their alleged force was still excessive.[6] *See Griffin v. Crippen*, 193 F.3d 89, 91-92 (2d Cir. 1999) (appellant's guilty plea on assault charges against corrections officers did not bar Eighth Amendment excessive force claim); *Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 543-44 (S.D.N.Y. 2005) (denying summary judgment to defendant police officers where plaintiff pleaded guilty to assaulting police officer, but "a jury could reasonably conclude that . . . after [plaintiff] had been subdued, he was subjected to excessive force by the individual defendants").

Suffolk County defendants' legal position with respect to the excessive force claim is necessarily premised on their argument that Harley does not claim that the officers used any force after she was subdued by police or after she was handcuffed. *See* SC Defs.' Memorandum of Law, at 6 ("She does not claim that any force was used against her after she was handcuffed. Rather, her claim is that the officers engaged in flagrantly unlawful act of beating her gratuitously and without provocation, prior to handcuffing her."); SC Defs.' 56.1 ¶ 19 (suggesting that, at her trial, "[s]he did not claim that the officers used any force toward her after she was handcuffed"). That factual premise, however, is simply

---

[6] Plaintiffs cite *Dye v. Virts*, No. 03-CV-6273L, 2004 WL 2202638 (W.D.N.Y. Sept. 28, 2004) and *Douglas v. Smith*, No. 05-CV-1000 (GTS/DRH), 2009 WL 789450 (N.D.N.Y. Jan. 26, 2009) for the proposition that a conviction for assault in the second degree pursuant to N.Y. Penal Law § 120.05(3) necessarily negates a claim of excessive force for an officers' actions prior to handcuffing the arrestee. The Court agrees that, given the factual allegations in *Dye* and *Douglas*, prevailing on the excessive force claims in those cases would necessarily have negated the "lawful duty" element. That, however, is not the case in the instant action.

incorrect. Plaintiff unquestionably claims that the police officers gratuitously beat her after she was subdued and after she was handcuffed.

For example, during the trial, plaintiff testified to the following force used *after she was handcuffed*:

> When the police officer – Officer Decoteau, when he threw me on the ground face down and banged my head down three, four times, he rubbed my skin from my forehead, my eyes, my nose, my lips, and he was trying to knock my teeth out, I was handcuffed at that time . . . . I was handcuffed when he threw me to the ground and splayed his fingers and banged my head.

(SC Defs.' Ex. C (Trial Tr. at 1342).)

Moreover, in her opposition to defendants' motion, plaintiff repeats these allegations of excessive force after she was subdued by police, including after she handcuffed. For example, plaintiff asserts that the officers formed a semi-circle around her and beat her with billy clubs. (Pl.'s 56.1 ¶ 28.) Plaintiff further contends that the officers engaged in excessive force after handcuffing plaintiff. Specifically, plaintiff claims that Decoteau "placed the plaintiff spread eagle on the ground, splayed his hand on the back of her head, and banged her head on the asphalt, hard, three or four times," then commenced to rub the skin from her forehead, eyebrows, nose, lips, and the right side of her face near the hairline. (*Id.* ¶ 30.) He then "picked the plaintiff up off the ground with one hand placed on the handcuffs, the other hand by the plaintiff's hair on the top of her head, and the hair on the right side of her head." (*Id.* ¶ 31.)

Plaintiff has submitted medical records in attempt to support some of her allegations. For example, plaintiff's "Discharge Summary" from Brookhaven Memorial Hospital, dated July 1, 2006, indicates that plaintiff was admitted with "an injury to her right shoulder" and a "large laceration, approximately 3.0 cm over the right shin with bone sticking out through this." (Pl.'s Opp., "Medical Exhibits.") Additionally, plaintiff's "Emergency Physician Record" from Brookhaven, dated June 27, 2006, notes the patient's "[f]orehead [a]brasions." (*Id.*) A document entitled "New York State Department of Health EMS Trauma - Prehospital Care Report," dated June 27, 2006, also indicates abrasions on the plaintiff's forehead. (*Id.*)

Accepting plaintiff's sworn testimony as true and viewing the facts in the light most favorable to plaintiff, the non-moving party, there is a material factual dispute as to whether defendants utilized excessive force towards plaintiff after she was subdued and/or after she was handcuffed. *See, e.g.*, *Nelson v. City of Stamford*, 3:09-cv-1690 (VLB), 2012 U.S. Dist. LEXIS 8907, at *20-21, 24 (D. Conn. Jan. 25, 2012) (denying summary judgment on excessive force claim where police officer "in attempting to affect [plaintiff's] arrest, kneed her in the back of her left leg, grabbed her by her hair and pushed her head down with such force that her wig came off and she felt her head bleeding"); *Ahmad v. Port Auth. of N.Y. & N.J.*, 09 CV 3134 (WFK)(LB), 2011 U.S. Dist. LEXIS 152060, at *4-5 (E.D.N.Y. Dec. 7, 2011) (denying summary judgment on excessive force claim where plaintiff alleged that after he was handcuffed, the officer "continued to yell at him and call him obscenities including 'terrorist,' threw

11

plaintiff's keys and shoe at plaintiff's face," then kept plaintiff on the ground for half an hour with "his foot on plaintiff's face"), *adopted by* 2012 U.S. Dist. LEXIS 7299 (E.D.N.Y. Jan. 23, 2012). The Court recognizes that the police officers dispute these allegations. However, if plaintiff's sworn testimony is credited by the jury, including her testimony regarding the force she states was utilized after she was handcuffed, she can prevail on her excessive force claim notwithstanding her conviction for assault of the police officers and resisting arrest based upon her conduct earlier in the incident. In short, given these post-handcuffing allegations and sworn testimony from plaintiff, plaintiff's convictions do not necessarily preclude an excessive force claim in this particular case. Accordingly, the Suffolk County defendants' motion for summary judgment is denied with respect to the excessive force claim.

### C. The County of Nassau

The Nassau County defendants argue that plaintiff cannot establish a *Monell* claim against Nassau County because plaintiff fails to allege (or provide evidence of) the personal involvement of supervisory officials, and because plaintiff fails to allege (or provide evidence of) any purported constitutional violations resulting from a municipal policy, practice, and/or custom.

As set forth below, the Court agrees. In a Memorandum and Order, dated December 30, 2010, the Court dismissed plaintiff's *Monell* claim against Nassau County on the grounds that plaintiff failed to allege a plausible claim that she suffered from a constitutional injury as a result of a policy or custom of the County. However, the Court gave plaintiff leave to re-plead this claim.

On March 14, 2011, plaintiff filed her Second Amended Complaint. Although the Second Amended Complaint contains conclusory allegations of a municipal policy or custom, such allegations are insufficient to state a plausible claim. In any event, there is no evidence in the record that would allow this claim to survive summary judgment.

Under *Monell*, a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." 436 U.S. at 694; *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). A policy, custom, or practice of the municipal entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*, 375 F.3d at 226 (quoting *Kern*, 93 F.3d at 44).

However, a municipal entity may only be held liable where the entity itself commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *see also Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("A municipality may not be held liable in an action under 42 U.S.C. § 1983 for actions

alleged to be unconstitutional by its employees below the policymaking level solely on the basis of *respondeat superior*."); *Vippolis v. Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was, in the language of the statute, the 'person who . . . subjected, or cause[d] [him] to be subjected,' to the deprivation of his constitutional rights." (quoting 42 U.S.C. § 1983)).

In the instant case, plaintiff has made only conclusory allegations as to how the purported constitutional violations resulted from a municipal policy, practice, and/or custom. For example, plaintiff states in her Second Amended Complaint:

> Police Officer McMullen stated that he even informed the Nassau County's Headquarters of the chase and his supervisor constituting an official policy [or] custom of the county making Nassau County culpable for the actions that led to the constitutional injury that the plaintiff sustained at the hands [of] the Suffolk County police officers.

(Second Am. Compl. at 3.[7])

Plaintiff further states that McMullen's "supervisor, and headquarters surely must have known about the numerous erroneous radio transmission[s] and this evidence clearly show a failure to train Nassau County employees as to display a deliberate indifference to the constitutional rights of the plaintiff." (*Id.*) These conclusory allegations do not state a plausible *Monell* claim and do not correct the pleading defects identified by the Court in the Memorandum and Order, dated December 30, 2010.

In any event, assuming *arguendo* that a plausible claim was stated, that claim cannot survive summary judgment because there is no evidence in the record to support it. Plaintiff has failed to provide evidence against any supervisory personnel in the Nassau County Police Department that would demonstrate their personal involvement in any constitutional deprivation allegedly suffered by the plaintiff. She has failed to name any supervisors as defendants, nor has she identified a specific supervisor who allegedly participated in the purported violations, or who was even informed at any point of the alleged violations. Plaintiff has failed to put forth any evidence to create a disputed issue of fact concerning Nassau County's involvement in the alleged violations. Accordingly, the County is entitled to summary judgment on the *Monell* claim.

### D.  Officer James McMullen

Nassau County Police officer James McMullen argues that plaintiff fails to assert, or provide any evidence of, any official or personal involvement on the part of McMullen in the purported violation of plaintiff's rights that can survive summary judgment. As set forth below, the Court agrees.

To state a claim for individual liability under § 1983, "a plaintiff must demonstrate a defendant's *personal* involvement in the alleged [constitutional violation] in order to establish a claim against such defendant in his

---

[7] Because plaintiff's pleadings and other submissions do not contain page numbers, all page references to plaintiff's documents are references to the page numbers provided by ECF docketing.

13

individual capacity." *Valenti v. Massapequa Union Free Sch. Dist.*, No. 09-CV-977 (JFB)(MLO), 2010 U.S. Dist. LEXIS 10076, 2010 WL 475203, at *8 (E.D.N.Y. Feb. 5, 2010) (citation omitted) (emphasis in original); *see Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) ("Absent some personal involvement by [a defendant] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under section 1983." (citations omitted)). "[M]ere bald assertions and conclusions of law do not suffice." *Davis v. Cnty. of Nassau*, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005) (citation and internal quotation marks omitted).

Construing all facts in the light most favorable to plaintiff, the non-moving party, McMullen tailgated plaintiff with his police lights flashing, at which point she accelerated to over 100 m.p.h. and began weaving in and out of traffic. While McMullen pursued plaintiff, he allegedly transmitted false radio information to other Nassau County police officers. This conduct allegedly resulted in plaintiff's unconstitutional arrest by the Suffolk County Police, and the injuries that allegedly flowed therefrom.

An initial matter, the Court notes that, in the Memorandum and Order, dated December 30, 2010, the Court denied defendant McMullen's motion to dismiss and found that plaintiff had adequately alleged personal involvement by defendant McMullen in unconstitutional activities to state a plausible Section 1983 claim against him for false arrest. In particular, the Court concluded that, given her allegations that Officer McMullen intentionally provided false information to the Suffolk County police in order to have them effectuate her arrest, she had stated a plausible false arrest claim against McMullen that could survive a motion to dismiss.

However, at the summary judgment stage, it is clear that any false arrest claim against McMullen cannot survive for two reasons. First, as with the Suffolk County defendants, plaintiff's criminal convictions preclude any claim under the *Heck* rule against defendant McMullen. Second, even apart from the *Heck* rule, plaintiff conceded that she engaged in certain illegal activity that would support her arrest by McMullen and/or the Suffolk County police utilizing McMullen's information. For example, plaintiff testified that, while she was driving on the L.I.E., McMullen pulled up behind her in his patrol car around exit 31 or 32, and she "just took off." (SC Defs.' Ex. C (Trial Tr. at 1297).) Plaintiff further admitted that "[i]t took maybe a couple of seconds to get up to 120, 120, and I just took off." (*Id.*) Plaintiff admitted that she refused to stop even after McMullen activated his flashing lights (NC Defs.' Ex. K (Trial Tr. at 1294).), and even after he subsequently "had his sirens on" (SC Defs.' Ex. C (Trial Tr. at 1300).) Although initially claiming that she did not know he wanted her to pull over even though his lights and siren were activated and that she feared for her safety, she later acknowledged, "[A]t that time when he was speeding behind me and I started doing 120, yes, I did know that he probably wanted me to pull over. But I thought if I got up further where there was more traffic, I would pull over so other people could witness what was going on." (*Id.* at

14

1300-01.)[8] Regardless of plaintiff's subjective motivation for going 120 m.p.h. and not stopping, it is clear based upon the undisputed evidence that she was going 120 m.p.h. as McMullen chased her, and thus there was probable cause to arrest her. Therefore, even apart from the *Heck* rule, any false arrest or malicious prosecution claim against McMullen cannot survive summary judgment based upon plaintiff's own sworn testimony.

Finally, a claim for excessive force cannot survive against McMullen. It is clear from the plaintiff's allegations and the evidence that McMullen was not even present when the alleged excessive force occurred. Therefore, plaintiff cannot assert an excessive force claim against McMullen.

Accordingly, the Court grants summary judgment to defendant McMullen.[9]

### E. Conspiracy Pursuant to § 1985

Section 1985 prohibits two or more persons from conspiring for the purpose of depriving any person of the equal protection of the laws, or of equal privileges and immunities under the laws. In order to establish a claim under § 1985(3), plaintiff must establish four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; [and] (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). The conspiracy must be motivated "by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* (quoting *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)).

Plaintiff offers no facts in support of any claim of conspiracy between the Nassau County defendants and the Suffolk County

---

[8] In addition to her trial testimony, plaintiff similarly testified in her deposition that: (1) McMullen put his strobe lights on, *see* Petillo Decl., Ex. I2 at 68 ("He put his strobe lights on. I noticed the light when he came diagonally towards me across all four other lanes."); (2) she "took off," *see id.* at 69; (3) eventually reached a speed of 110 m.p.h., *see id.* at 75 ("I was just speeding, okay, but eventually it went up to one hundred ten"); and (4) and maintained that speed "[a]ll the way into Suffolk County, and he [McMullen] was behind me . . . [t]he whole time," *id*. at 78. Plaintiff further acknowledged in her deposition that, at some point, McMullen also had his siren on. (*Id.* at 76.)

[9] To the extent the Second Amended Complaint could be liberally construed as attempting to allege a Section 1983 conspiracy to use force or otherwise violate her constitutional rights, there is also no evidence for a conspiracy claim against McMullen to survive summary judgment. In particular, there is absolutely no evidence that McMullen (who was not present at the time of the car stop) conspired with the Suffolk County officers who allegedly used excessive force following the stop of plaintiff's vehicle in Suffolk County. Similarly, to the extent the Second Amended Complaint could be construed as raising state law claims against the Nassau County defendants (although the plaintiff makes no mention of any state law claims), such claims are barred by plaintiff's failure to comply with New York General Municipal Law § 50. *See, e.g.*, *Beeks v. Reilly*, No. 07-CV-3865 (JFB)(ARL), 2008 U.S. Dist. LEXIS 65539, at *27-29 (E.D.N.Y. Aug. 21, 2008).

defendants. Further, plaintiff fails to identify any racial motivation or discriminatory animus behind the alleged conspiracy. Accordingly, the Court grants summary judgment to all defendants with respect to any Section 1985 claim.

## IV. CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted as to the Nassau County defendants. As to the Suffolk County defendants, the motion for summary judgment is denied with respect to plaintiff's claim of excessive force, and granted with respect to all other claims.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:   February 28, 2012
         Central Islip, NY

\* \* \*

Plaintiff is representing herself *pro se*: Bedford Hills Correctional Facility, P.O. Box 100, 247 Harris Road, Bedford Hills, New York 10507. The attorneys for Nassau County and defendant James McMullen are Diane C. Petillo, Esq. and Esther D. Miller, Esq., Office of the Nassau County Attorney, One West Street, Mineola, New York 11501. The attorneys for the Suffolk County defendants, are Arlene S. Zwilling, Esq. and Brian C. Mitchell, Esq., Office of the Suffolk County Attorney, H. Lee Dennison Building – Fifth Floor, 100 Veterans Memorial Highway, Hauppauge, New York 11788.